J-S17030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK FORKAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RANDOLPH FORKAL | |
| Appellee | No. 1363 MDA 2019 |

Appeal from the Judgment Entered August 14, 2019
In the Court of Common Pleas of Susquehanna County
Civil Division at No: 2007-1140 CP

BEFORE:  PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:              **FILED OCTOBER 08, 2020**

Appellant, Mark Forkal ("Mark"), appeals from the August 14, 2019 judgment entered in the partition action Appellant filed against Appellee, Randolph Forkal ("Randolph").  We vacate and remand.

The procedural history is long and very complex, with the parties having proceeded through several appeals already.  For purposes of the instant appeal, we offer the following summary.  The parties are brothers, and this action involves two non-contiguous tracts of farmland devised to the brothers by their mother, Virgie Forkal, who passed away in October of 2002.  One tract covered 137 acres, including 90 acres of tillable land ("the 137-acre plot").  The other covered 197 acres, including 60 acres of tillable land and a dairy barn with 95 stalls ("the 197 acre plot," and, collectively with the 137-acre plot, "the Properties").  Pursuant to Mrs. Forkal's will, Mark and Randolph

own the Properties as tenants in common. Mark lived on and farmed the 137-acre plot beginning in 2003, but he claims he has not visited the Properties since July of 2015 because of Randolph's threats of violence. Randolph has lived on and farmed the 197-acre plot since Mrs. Forkal passed away. While they were cotenants, the parties signed separate lease agreements with different gas companies for the subsurface rights to the Properties.[1]

Mark filed this partition action on August 10, 2007, seeking to have the Properties equally divided between parties. He also requested fair rental value of the land and farming equipment on the 197-acre plot. Randolph filed an answer and new matter seeking payment for one-half of the value of the crops Mark raised on the 137-acre plot and payment for caring for cattle that Mark owned. The trial court appointed a master, who concluded the Properties could not be equally divided between the parties. The trial court denied Randolph's exceptions to the master's report, and this court affirmed. *Forkal v. Forkal*, 1485 MDA 2012 (Pa. Super. May 15, 2013) (unpublished memorandum). Thereafter, the parties proceeded through several private sales. The first private sale, at which Mark was the high bidder, took place on July 9, 2014. The trial court set that sale aside by order of September 15, 2014. Mark was again the high bidder at the second sale, which the trial court

_____

[1] The private sale presently at issue, conducted on September 17, 2018, was for the surface rights only.

confirmed by order of October 27, 2015. On December 20, 2016, this Court vacated the order confirming the sale and remanded for a new valuation hearing, concluding that the trial court failed to enforce one of its own orders; that discovery was incomplete; and that the master failed to serve on the parties its petition to proceed with the private sale. ***Forkal v. Forkal***, 2053 MDA 2016 (Pa. Super. December 20, 2016).[2]

The new valuation hearing occurred on May 23, 2018. At the private sale presently at issue, conducted on September 17, 2018, Randolph was the high bidder, at $1,655,000. Mark's losing bid was $1,651,000. Randolph promptly paid a 10% deposit in accord with the master's letter describing the terms and conditions of the private sale, but failed to pay the remaining balance[3] within 20 days, as per the master's instructions. On November 8, 2019, Mark filed a petition asking for sanctions, noting that Randolph had failed to pay his winning bid. Mark asked that Randolph's 10% payment toward his bid be forfeited and that Mark be named the winning bidder. On January 18, 2019, the trial court entered an order denying Mark's requested relief but directing Appellant to pay a $390,000.00 portion of the balance due on his bid within ten days. Randolph has paid that amount.

---

[2] This memorandum addressed four consolidated appeals. This Court quashed the appeals at three of the four docket numbers and remanded at number 2053.

[3] In total, Randolph was required to pay half of his winning bid, or $827,500.00, in order to buy out Mark's ownership share of the surface rights.

- 3 -

On February 7, 2019, Mark filed a petition requesting reconsideration of the January 18, 2019 order. In that petition, Mark asked, among other things, for the trial court to name him the successful bidder in light of Randolph's failure to pay his successful bid as per the court-ordered time schedule. Failing that, Mark requested a new private sale. The trial court conducted a hearing on these matters, as well as a trial on the valuation of some farm property, on February 13, 2019. On May 14, 2019, the trial court entered an order directing Randolph to pay Mark $28,475 (half the value of farming equipment in Randolph's possession); $69,700 (half the market value of Randolph's house minus a credit for real estate taxes he paid); and directing Mark to pay Randolph $10,800 (half the value of the tillable acreage on the 137-acre plot).

The parties filed competing motions challenging the May 14, 2019 order. Mark challenged, among other things, the noncompliance of the master and trial court with Pa.R.C.P. No. 1573, a matter we will discuss in more detail below. Similarly, Randolph's motion requested confirmation of the September 18, 2018 sale price. The trial court scheduled a hearing on these motions for August 7, 2019. At the hearing's conclusion, the trial court entered an order directing, among other things, the master to file a proposed order within ten days. Judgment was entered on August 14, 2019, before the master complied.

On August 7, 2019, the trial court entered an order denying the parties' competing post-trial motions, and directing the master to file a return of sale and proposed order with the prothonotary, pursuant to Pa.R.C.P. No. 1573. Judgment was entered on August 14, 2019, with no further filing from the master. This timely appeal followed.

Mark presents four questions. In his first argument, which is based on Randolph's failure to pay for his successful bid at the September 17, 2018 private sale, Mark claims the trial court erred in denying his request to be named the successful bidder or, in the alternative, his request for a new private sale. Second, Mark claims the trial court erred in crediting Randolph for real estate taxes Randolph paid on behalf of the Properties. Third, Mark claims the trial court erred in failing to credit him for Randolph's periods of exclusive use of the Properties. Fourth, Mark claims he is entitled to continuing rent for Randolph's exclusive use of the Properties because the trial court has not entered a proper partition order in accordance with governing law. Appellant's Brief at 4-5.

Partition of property, which is governed by the Pennsylvania Rules of Civil Procedure, presents a question of law to the extent we must interpret the rules. Our standard of review as to questions of law is *de novo* and our scope of review is plenary. *Bargo v. Kuhns*, 98 A.3d 686, 689–90 (Pa. Super. 2014). We observe, also, that partition is an equitable remedy. *Marchetti v. Karpowich*, 667 A.2d 724, 727 (Pa. Super. 1995). This Court's scope of

appellate review in equity matters is narrow and is limited to determining whether findings of fact are supported by competent evidence, whether an error of law has been committed or whether there has been a manifest abuse of discretion. *Hercules v. Jones*, 609 A.2d 837, 839 (Pa. Super. 1992). "[T]rial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. *Nicholson v. Johnston*, 855 A.2d 97, 102 (Pa. Super. 2004), *appeal denied*, 868 A.2d 453 (Pa. 2005).

In his first argument, Mark claims the trial court, in failing to force Randolph to pay his winning bid, committed an error of law and abuse of discretion. Appellant relies in part on Rule 1573 of the Pennsylvania Rules of Civil Procedure, titled "Return of Sale and Schedule of Distribution," which provides in relevant part as follows:

> (a) Where the sale has been conducted by a master, the master shall promptly file with the prothonotary a return of sale together with a proposed order which shall
>
>> (1) confirm the sale;
>>
>> (2) authorize the master to execute and deliver to the purchaser all necessary deeds and other instruments of title;
>>
>> (3) contain appropriate provisions for the protection of life tenants, unborn and unascertained remaindermen, persons whose whereabouts are unknown, or other persons in interest and for the release or discharge of such interests;
>>
>> (4) direct distribution of the proceeds to the persons or parties entitled; and
>>
>> (5) provide for the payment of costs.

Pa.R.C.P. No. 1573(a).[4]

Upon review of the record, we conclude that a remand is necessary for compliance with the clear mandates of Rule 1573. The record does not reflect that the master ever filed a return of sale after the September 17, 2018 private sale. A return of sale is an obvious and necessary prerequisite to a court entering an order confirming the sale. Implicit in Rule 1573 is that payment of the proceeds be made after sale so that the master may prepare a proper return of sale and proposed court order that, *inter alia*, must direct distribution of the proceeds to persons or entities entitled to them. The trial court here never entered an order confirming the sale as is required under Rule 1573(a)(1), nor does it appear that the court would have been able to do so. **See** 122 Standard Pennsylvania Practice 2d 105 ("A sale in partition is a judicial sale. It is made under an order of the court, its subject is in the hands of the court, the proceeds are necessarily brought into court for distribution, and the whole proceeding is directly the act of the court."). Nonetheless, despite the August 7, 2019 order directing the master to file a proposed order within ten days, judgment was entered seven days later without a return of sale or proposed order from the master. The only subsequent motion the master filed was his October 2, 2019 motion for

---

[4] Pennsylvania Rules of Civil Procedure 1551 to 1590, which govern partition actions, were promulgated in 1955. Prior to that time, partition actions were governed by statutes. The Rules of Civil Procedure suspended those statutes. **See Beall v. Hare**, 174 A.2d 847, 849 (Pa. 1961).

withdrawal as partition master (a motion the trial court granted on October 8, 2019).

In summary, there is no record of the master's compliance with Rule 1573 or with the trial court's August 7, 2019 order directing the master's compliance with Rule 1573. In turn, the trial court did not and could not file an order confirming the September 17, 2018 sale. Furthermore, the record does not reflect that Mark could have received the proceeds to which he is entitled under Rule 1573(a)(4).[5] *See* 122 Standard Pennsylvania Practice 2d 133 ("Where a sale has been conducted by a master, the master must promptly file with the prothonotary a proposed order, which must direct distribution of the proceeds to the persons or parties entitled."). Given the lack of compliance with the clear mandates of Rule 1573, we are constrained to vacate the judgment and remand for compliance with Rule 1573.[6] We are

---

[5] It is noted that the master's correspondence describing the terms and conditions of the private sale required that the proceeds be paid within twenty days after sale, a condition which was not met. Mark attached a copy of the Master's August 1, 2018 correspondence as an unlettered exhibit to his November 18, 2018 petition for sanctions.

[6] Randolph argues that Mark raised noncompliance with Rule 1573 too late, citing it for the first time in his May 24, 2019 motion for reconsideration of the trial court's January 18, 2019 order. Randolph equates Mark's May 24, 2019 motion to a post-trial motion, inasmuch as it followed the trial on the parties' competing claims as to valuation and rental value of certain items on the Properties. Randolph cites Rule 227.1(b)(2), which requires the movant to specify where the grounds for post-trial relief are preserved. Randolph's reliance on Rule 227.1(b)(2) is misplaced for several reasons. First, Mark consistently complained that Randolph never paid the amount he owed for his

cognizant that Mark has asked to be named the successful bidder and/or for a new private sale. If, upon remand, Randolph is unable to pay the remaining amount due on his bid if permitted and as directed by the trial court, we leave it to the trial court's equitable discretion to determine an appropriate remedy.[7]

The remainder of Appellant's issues arise from the February 13, 2019 valuation trial. Having reviewed the parties' briefs, the record, the trial court opinion, and the applicable law, we discern no abuse of discretion in the trial court's valuations of the various items in dispute. In particular, we note the absence of any legal authority that the trial court should not have credited

_____

successful bid at the September 18, 2018 private sale and Rule 1573 is the vehicle for confirming the result of a private sale and distributing proceeds accordingly. Second, the lack of compliance with Rule 1573, by both the trial court and the master, is unrelated to the matters in dispute at the valuation trial. Finally, Rule 1573(c) provides that if the court approves of the return of sale in whole or in part, it shall enter an appropriate order that shall become final, unless a motion for post-trial relief is filed within 10 days. The trial court's entry of judgment in this matter without ever receiving the master's return of sale and proposed order in accord with Rule 1573, deprived Mark of any ability to file exceptions to a proposed 1573 order. For these reasons, we cannot conclude that Mark waived his Rule 1573 argument.

[7] While the Rules of Civil Procedure governing partition actions provide both for a private or public sale of property and for confirmation of a sale, the rules do not address procedure in the event there is a default in payment. The partition sale rules are distinct in this respect from the Real Estate Tax Sale Law, 72 P.S. § 5680.101 *et. seq*, which governs judicial sales of real property for delinquent payment of property taxes. It provides that the purchaser of a property at an upset sale is to pay the entire purchase money on the date of sale or no later than one hour before close of business or at the designated time. *Id.* at § 5680.606. If not so paid, the sale shall be voided and the property put up again at the same sale, if possible, or at any adjournment, readjournment or continuation of the sale. *Id.*

Randolph for the real estate taxes he paid on behalf of the Properties. Further, Mark develops no legal argument as to why the trial court's remaining valuation decisions amounted to an abuse of its equitable discretion. We therefore reject Appellant's remaining arguments based on pages four through eight of the trial court's May 14, 2019 opinion.

In summary, we have vacated the judgment and remanded for compliance with Rule 1573. Appellant's remaining arguments do not merit relief.

Judgment vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2020

- 10 -

## IN THE COURT OF COMMON PLEAS OF
## SUSQUEHANNA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MARK FORKAL | : | |
| **Plaintiff** | : | |
| | : | |
| vs. | : | |
| | : | |
| RANDOLPH FORKAL | : | |
| **Defendant** | : | No. 2007-1140 C.P. |

### OPINION

### I. Procedural History

This partition action was initiated by plaintiff Mark Forkal ("Plaintiff") when he filed a complaint on August 10, 2007 seeking to have two parcels of real property located in Springville, Susquehanna County, Pennsylvania, divided equally between himself and his brother, defendant Randolph Forkal ("Defendant").[1] Plaintiff also requested partition of all farming equipment as well as one half of the fair rental value of the equipment and one half the fair rental value of the 197-acre parcel.[2] On October 11, 2007, Defendant filed an answer with counterclaims seeking payment for one half the value of crops grown by Plaintiff on one of the parcels and payment for caring for cattle owned by Plaintiff.

On July 7, 2008, this Court directed that the real property be partitioned between the parties with each party receiving a fifty percent share. A master was appointed to hear the partition matter and on June 9, 2008, the Master recommended a new appraisal of the property.

---

[1]    The two properties were devised to Plaintiff and Defendant pursuant to the last Will and Testament of Virgie Forkal. The two brothers owned the properties as tenants in common until a deterioration of their sibling relationship instigated the partition action. One parcel contains approximately 196 acres and includes an updated home, shop, barn and farming equipment. See Forkal v. Forkal, No. 2007-1140 C.P., slip op. (Susq. Cty. Ct. of Common Pleas 2012). The other parcel contains approximately 137 acres with no buildings of value. Id. Both parcels can be utilized for agricultural purposes. Id. The parties each signed separate natural gas leases with different companies for the oil and gas rights.

[2]    Plaintiff alleged that Defendant had sole possession of the 197-acre parcel since the death of Virgie Forkal.

Defendant filed exceptions to the recommendation and on October 1, 2009, the Court denied the exceptions and ordered that a qualified appraiser be employed to appraise the property.[3] On March 4, 2011, the Master issued an amended recommendation and found that based on an appraisal of the properties, the value of the 196.75-acre parcel was $872,000 and the value of the 137.69-acre parcel was $575,000. Both parties filed exceptions to the Master's recommendation.[4]

On September 21, 2011, the Court found that the Master was correct in ordering a private sale of the property and issued an order remanding the case back to the Master to consider the partition of the farm equipment and the issue of payment of rent.[5] On March 5, 2012, the Master issued an amended recommendation, finding that the farm equipment should be sold at auction and the proceeds divided equally between Plaintiff and Defendant. He also found that Defendant has had the exclusive use of a home on one of the properties and should be charged $1,000/month rent from October 13, 2002 to the date of sale of that property. Both parties filed exceptions. On July 17, 2012, the Court overruled the exceptions but also determined that the Master failed to credit Defendant for one half of taxes paid on the property (which totaled $33,365.50) and directed that Defendant was to receive a credit for those amounts.[6] On June 16,

---

[3]     The court found that the property was not capable of division, noting that "while each party believes partition is possible *on his own terms*, a mutually acceptable partition is not feasible." Forkal v. Forkal, No. 2007-1140 C.P., slip op. (Susq. Cty. Ct. of Common Pleas 2009). Defendant appealed this order. On August 4, 2010, the Superior Court quashed that appeal because it was an appeal from an order that was not a final order.

[4]     Plaintiff contended that the Master failed to address his request for partition of farming equipment and his request for fair rental value for Defendant's exclusive possession of one of the properties.

[5]     Defendant appealed this order and on January 5, 2012, the Superior Court quashed the appeal because it was taken from an interlocutory order.

[6]     Defendant appealed this decision to the Superior Court. On May 15, 2013, the Superior Court affirmed the decision.

2

2014, the Master conducted a sale of the real property.[7] On July 9, 2014, the Court confirmed the sale.

On September 15, 2014, the sale was set aside by the Court which granted Defendant's motion for post-trial relief.[8] A second private sale was scheduled for October 7, 2015. Plaintiff was the highest bidder with a bid of $739,000 for the surface rights of the two parcels only. On October 27, 2015, the sale was confirmed. On December 20, 2016, the Superior Court vacated the October 27, 2015 order confirming the sale and remanded the case directing that the Court comply with its September 15, 2014 order.

On August 2, 2017, the Court authorized the Master to order an appraisal of the surface and subsurface of the parcels. A valuation hearing was held on May 23, 2018 and the parties stipulated that the market value of the two parcels is $935,000. The Court then ordered the Master to schedule a private sale of the real property.

A private sale was held on September 17, 2018 and the high bidder was Defendant with a bid of $1,655,000. Defendant paid a deposit of $165,500 but did not pay the remaining balance by October 8, 2018 when due. Plaintiff filed a petition for sanctions. On January 18, 2019, the Court issued an order directing Defendant to pay $390,000, a portion of the remining amount owed towards his bid. The Court also directed the parties to file any claims they had against the other as to the real or personal property.

On February 7, 2019, Plaintiff filed a petition for reconsideration of the Court's January 18, 2019 order, petition for a private sale and petition for sanctions. Plaintiff sought an order

---

[7] Plaintiff was the high bidder at a bid of $5,001,000. At that time, the Master accepted a deposit of $500,100 from Plaintiff.
[8] The Court ordered a new appraisal of the property and a re-hearing on the matter to determine the value of the property. The Court also found that the existing gas and oil leases are to eb considered personal property belonging to each leaseholder.

3

from the Court: (1) to find that Plaintiff was the high bidder at $1,651,000 and that Defendant was not the successful bidder because he did not comply with the bidding procedures, or (2) to strike Defendant's bid of $1,655,000 and direct the Master to hold another private sale of the property; and (3) to award Plaintiff one half the market value and rental value of the farm equipment and tools; (4) to decree that plaintiff is the owner of at least fifty percent of oil and gas royalties; and (5) to award Plaintiff one half the rental value of both farmstead properties and allow the properties to be enrolled in the "Clean and Green" program. On February 8, 2019, the Court denied Plaintiff's petitions.

On February 13, 2019, a hearing was held on the parties' claims related to the real and personal property. The parties have had the opportunity to submit their respective briefs. The matter is now ripe for disposition.

II. **Findings**

1. An evidentiary hearing was held on February 13, 2019.

2. Plaintiff presented the expert testimony of Donald Michael Cunningham ("Cunningham") who has been a licensed real estate agent in Pennsylvania for five years.

3. Cunningham provided an opinion as to the rental value of the 198-acre farmstead considering it to be a four-bedroom, two-bathroom house.

4. Cunningham opined that from 2002 to 2007, the rental value was about $550 per month. From 2008 to 2010, the rental value was about $850 a month and from 2010 onwards, it is about $1,200 a month.

5. Plaintiff presented the testimony of Sarah Erin Proof ("Proof") who is the Assistant Director for the Susquehanna County Assessment Office.

4

6. Proof stated that in order to enroll the two parcels in the Clean and Green program, both owners would have to sign the application.

7. If the parcels were enrolled in Clean and Green, there would be approximately a fifty percent real estate tax savings.

8. Plaintiff testified that the last time he was on either of the properties was in 2014 because Defendant threatened him and told him to get off of the property.

9. Plaintiff stated that Defendant has had the exclusive use of both properties since 2014.

10. Defendant has lived in their mother's farmhouse on the 196-acre parcel since their mother died in October of 2002.

11. Plaintiff planted oats and corn on 40 acres of the 137-acre property and did the haying on the remainder of the 137-acre property from 2007 through 2014.

12. Plaintiff estimated it would be around $30 per acre per year to rent the 90 tillable acres on the 137-acre parcel.

13. Plaintiff has not paid the real estate taxes on the properties since 2006.

14. The real estate taxes were paid by Defendant for both parcels from 2007 through 2018 totaling $115,025.75. (Resp. Ex. 1.)

15. Defendant would not agree to place the properties in Clean and Green.

16. The 196-acre parcel has a dairy operation which could be rented out for $950 a month.

17. The parties stipulated to the $68,020 value of the machinery/equipment contained in an appraisal of the personal property performed by Robert Shaler in 2003. (Pet. Ex. 4.)

5

18. Plaintiff has possession of a grinder/mixer appraised for $50 and a tractor with a backhoe valued at $5,500.

19. Defendant has possession of the rest of the farming machinery/equipment listed on the appraisal.

20. Plaintiff wants one half the value of the machinery/equipment.

## III.  Discussion

### A.  Partition of Personal Property

Personal property of every class is subject to partition. Tioga No. 2 Bldg. Ass'n v. N. Philadelphia Tr. Co., 189 A. 708, 710 (Pa. Super. Ct. 1937).[9] Partition of personal property is governed by 68 P.S. § 111 which provides the following:

> Whenever personal property is owned jointly, by persons who are not partners, or are not husband and wife, and any one of such persons desires to dispose of his or her right, title, and interest in said personal property, and cannot arrive at a satisfactory arrangement with the other owner or owners of such personal property for the disposition of such personal property, it shall be lawful for such person to petition to the court of common pleas of the county wherein such property is situated, citing the facts of such joint ownership, the value of the property, and the inability of the joint owners thereof to agree to the amiable disposition thereof....

Plaintiff had the use and possession of a grinder/mixer appraised for $50 and a tractor with a backhoe valued at $5,500 (for a total value of $5,550 and a one-half value of $2,750). Defendant had possession and use of equipment appraised at $62,450 (with a one-half value of $31,225). Each party is entitled to one half the value of all machinery/equipment possessed by

---

[9]     However, because the procedures relating to partition of real property are more complicated than those dealing with personal property, an action for partition of personal property should not be combined with an action for partition of real -property. See Tyson v. Tyson, 68 Pa. D. & C.2d 627, 633-34 (Chester Cty. Ct. of Com. Pl. 1974). In his complaint for partition filed on August 10, 2007, Plaintiff alleged that he was entitled to an award of one half the fair market value of the farming equipment based on an appraisal of that property performed shortly after the estate of Virgie Forkal was opened (Count II).

the other party. Defendant owes Plaintiff $28,475 representing one half the value of machinery /equipment that was solely in the possession of Defendant.[10]

B.    **Fair Market Rental Value of House**

Plaintiff's request for fair market rental value of the home occupied by Defendant is governed by 68 P.S. § 101 which provides the following:

> In all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, and one or more of said tenants shall have been or shall hereafter be in possession of said real estate, it shall be lawful for any one or more of said tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate for the time such real estate shall have been in possession as aforesaid; and in case of partition of such real estate held in common as aforesaid, the parties in possession shall have deducted from their distributive shares of said real estate the rental value thereof to which their co-tenant or tenants are entitled.

See Citizens Deposit & Tr. Co. of Sharpsburg v. Citizens Deposit & Tr. Co. of Sharpsburg, 136 Pa. Super. 413, 420, 7 A.2d 519, 523 (1939)("68 P.S. § 101 has changed the common law rule that there could be no recovery by one tenant in common out of possession from his co-tenant in possession of a share of the rental value of the property without proof of an agreement to pay the same").

Defendant had exclusive possession of the house located on the 196-acre parcel. Plaintiff presented testimony of Donald Cunningham that the fair market rental value for the home for the period 2007 through 2009 (3 years) was $850 per month (for a total of $30,600) and from 2010 through 2018 (9 years) was $1,200 per month (for a total of $129,600). Plaintiff is entitled to one half that rental value from 2007 through 2018 ($80,100) when Defendant had exclusive possession of the home.

---

[10]    $31,225 (representing one half the value of machinery in Defendant's possession) minus $2,750 (representing one half the value of machinery in Plaintiff's possession) = $28,475.

7

Defendant paid all real estate taxes for both parcels from 2007 through 2018 and seeks a credit for one half these payments ($57,512.88) as well as reimbursement from Plaintiff for the other half of these payments ($57,512.88). However, Defendant had refused to enroll the parcels in the Clean and Green program which would have resulted in a tax savings of nearly fifty percent. Additionally, Defendant had exclusive possession of the dairy barn operation which had a rental value of $91,200.[11] Given that Defendant refused to enroll the parcels in this tax-saving program which would have resulted in a tax savings of nearly fifty percent as well as the fact that Defendant had exclusive possession of the dairy barn operation and will be receiving payment from Plaintiff for use of the tillable acreage (see below), Defendant will not be awarded a credit for all real estate tax payments he made.

However, because Plaintiff will be awarded one half the fair market rental value of the house ($81,100), Defendant should receive a credit against that amount for one half the real estate taxes Defendant paid solely towards the house in the amount of $10,400.

C.     Fair Market Rental Value of the Tillable Acreage

Plaintiff provided testimony that the 90 acres of tillable acreage would rent for $30 per acre per year.[12] The rental value of the 90 tillable acres at $30 an acre for eight years is $21,600. One half that amount is $10,800. Since Plaintiff had use of the tillable acreage from 2007 through 2014, Plaintiff owes Defendant $10,800 representing one half the rental value of the tillable acreage on the 137-acre parcel.

---

[11]     Testimony was presented that the 196-acre parcel has a dairy operation which could be rented out for $950 a month (95 stalls at a rental price of $10 per stall). Rental of the dairy barn for 8 years ($11,400 per year) would equal $91,200 (with a one-half value of $45,600).
[12]     Defendant did not provide any evidence in rebuttal of this amount.

8